**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Emergency Group of Arizona Professional Corporation, et al., <br><br> Plaintiffs, <br><br> v. <br><br> United Healthcare Incorporated, et al., <br><br> Defendants. | No. CV-19-04687-PHX-MTL <br><br> **ORDER** |

This case was initiated in Arizona state court by Plaintiffs to recover additional monies from the Defendants, United Healthcare Incorporated and its affiliates. Plaintiffs have already been paid an amount for their out-of-network provider services; an amount that is set by the healthcare benefit plans offered by Defendants to their insureds. These payments, Plaintiffs contend, fall below the usual and customary rate for their services and they are entitled to the difference. Presently before the Court are Plaintiffs' Amended Motion to Remand (the "Remand Motion") to state court (Doc. 33) and Defendants' Motion to Dismiss (Doc. 31). Because the Employee Retirement Income Security Act ("ERISA") establishes a comprehensive federal-law remedy that completely preempts Plaintiffs' state causes of action, the Remand Motion is denied and the Motion to Dismiss is granted.

**I.  FACTUAL BACKGROUND**

The following facts derive from the First Amended Complaint and Answer. (Docs. 18 & 44.) Plaintiffs are a collection of professional emergency medicine services groups

that contractually provide medical staff to 16 hospitals located throughout Arizona. The Defendants include UnitedHealth Group, Inc., United HealthCare, Inc., and several of their affiliates (collectively "UHC"). According to the First Amended Complaint, UHC is a healthcare insurer and plan administrator that "is responsible for administering and/or paying for certain emergency medical services." (Doc. 18 at ¶¶ 6-12.)

By virtue of federal and Arizona law, hospitals are required to provide medical services to any person who presents at the hospital for emergency treatment.[1] As the emergency medical personnel for each contracted hospital, Plaintiffs' physicians "fulfill this obligation for the hospitals which they staff. In this role, [Plaintiffs'] physicians provide emergency services to all individuals, regardless of insurance coverage or ability to pay, including to Patients with insurance coverage issued, administered and/or underwritten by [United HealthCare]." (Doc. 18 at ¶ 17.)

Thus, some patients for whom Plaintiffs must provide emergency medical services are covered by UHC plans. Among the UHC-insured patients are those whose UHC plan does not have a contract with Plaintiffs for medical service payments. Plaintiffs and their medical staff are, therefore, considered "non-participating" or "out-of-network providers" under these circumstances.[2] (Doc. 18 at ¶ 38.) Plaintiffs claim that, historically and through 2018, their claims for emergency services were paid at "75-90% of Plaintiffs' billed charge." (*Id*. at ¶ 53.) This includes out-of-network claims submitted to UHC. (*Id*. at ¶ 52.) According to Plaintiffs, "[t]his longstanding history establishes that a reasonable reimbursement rate for Plaintiffs' Non-Participating Claims for emergency services is 75-90% of Plaintiffs' billed charge." (*Id*. at ¶ 53.) In early 2019, UHC reduced the out-of-network reimbursement rate for some of Plaintiffs' services, causing Plaintiffs to earn less money for performing the same services. (*Id*. at ¶ 54.)

## II. PROCEDURAL HISTORY

Plaintiffs filed their Complaint in Arizona Superior Court on June 10, 2019. It

---

[1] *See* 42 U.S.C. § 1395dd and A.R.S. § 20-2803.
[2] As opposed to out-of-network providers, an "in-network" provider is a healthcare services provider that has a contract with an insurance plan for payment at specified rates.

- 2 -

asserted six claims for relief originating under state law: breach of implied-in-fact contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, unfair competition under A.R.S. § 20-442, consumer fraud under A.R.S. § 44-1522, and for declaratory judgment under A.R.S. § 12-1831, et seq. (Doc. 1-1.)

UHC removed under 28 U.S.C. § 1441(c)(1)(A). (Doc. 1.) The basis for removal, as asserted by UHC, is federal-question jurisdiction under 28 U.S.C. § 1331. (*Id.* at 2 ¶ 4 ("Plaintiffs' claims against Removing Defendants are removable to this Court because Plaintiffs seek recovery of benefits under an employee welfare benefit plan and such claims for benefits are completely preempted by [ERISA].")).

Plaintiffs' filed an Amended Complaint on August 9, 2019, which adds a seventh claim for relief for civil racketeering under A.R.S. § 13-2301, et seq. (Doc. 18.) Pursuant to this Court's order, UHC filed its Answer on October 25, 2019. (Doc. 44.)

Plaintiffs filed their Amended Motion to Remand on September 30, 2019. (Doc. 33.) The Motion argues that ERISA preemption does not apply because the claims asserted here are limited to state-law causes of action that address the rate of payment chosen by UHC for non-contracted emergency medical services. (*Id.* and Doc. 42.) UHC opposes the Motion on the basis that § 502(a) of ERISA completely preempts the state-law claims. (Doc. 41.) UHC further argues that the complete preemption doctrine mandates dismissal of the Amended Complaint or, alternatively, that it should be dismissed for pleading deficiencies. (Doc. 31.)

## III. AMENDED MOTION TO REMAND

Plaintiffs allege that, "[b]eginning in January 2019, Defendants have slashed their reimbursement rate for [some] Non-Participating Claims to less than half [of] the average reasonable reimbursement rate." (Doc. 18 at ¶ 54.) They describe this action as "drastic payment cuts [that] are entirely inconsistent with the established rate and [the] history between the parties." (*Id.* at ¶ 55.) Plaintiffs admit that some of their out-of-network claims are paid by UHC "at higher rates and in some instances at 100% of the billed charge," however, the crux of their claims are that, for many out-of-network claims, UHC

is "arbitrarily . . . manipulating the rate of payment for claims submitted by Providers." (Id. at ¶ 56.) They contend that UHC is taking financial advantage of the absence of a contract establishing payment terms and the legal requirements that hospitals provide emergency services to all patients regardless of their status as insureds. In that regard, UHC, according to Plaintiffs, can establish payment terms in its sole discretion. Thus, Plaintiffs seek to recover amounts due to them at "the usual and customary rate for emergency services [they] provided to their Patients, or, alternatively for the reasonable value of the services provided." (*E.g.*, Doc. 18 ¶ 62.) They have asserted state law claims to obtain this recovery and look to return to their chosen forum in Arizona state court.

UHC disagrees with Plaintiffs' characterization of the facts. Insofar as the merits go, at this early stage, UHC contends that Plaintiffs are being reimbursed, fairly, as out-of-network providers. In opposition to the remand motion, UHC argues that Plaintiffs' state law claims are subsumed within the federal remedial structure established in § 502(a) of ERISA. UHC maintains that Congress completely preempted state law causes of action for ERISA plan benefits. UHC further argues that Plaintiffs cannot avoid preemption because they lack a non-ERISA agreement between themselves and UHC.

### A. Standard of Review

The federal courts have subject-matter jurisdiction over cases arising under the Constitution and the laws of the United States. Const. art. III § 2; 28 U.S.C. § 1331. Litigation initiated in a state court that includes a cause of action arising under federal law is subject to removal to federal court. 28 U.S.C. § 1441(c)(1)(A).

Our judicial system recognizes, however, that "[s]tate courts enjoy a 'deeply rooted presumption' that they have jurisdiction to adjudicate all claims arising under state or federal law." *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1056 (9th Cir. 2018). On a motion for remand, therefore, this Court is to presume that federal jurisdiction does not exist. *Id*. The burden is on the removing party to rebut this presumption and prove the existence of subject-matter jurisdiction. *Id*. at 1057. Consistent with this principle is the well-pleaded complaint rule, which holds that a plaintiff may avoid removal by

eschewing federal claims in favor of exclusive state-law grounds for relief. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Moreover, a defendant generally cannot successfully remove a case simply by asserting federal-law defenses. *Id* at 393.

An exception to the well-pleaded complaint rule lies in cases of complete preemption by federal law. When a "federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207–08 (2004) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003) (internal quotation marks omitted)); *see also Caterpillar Inc.*, 482 U.S. at 393.

### B. ERISA Preemption

In *Aetna Health Inc. v. Davila*, the Supreme Court held that ERISA is a federal statutory scheme that completely preempts certain state law causes of action. 542 U.S. at 208. To be more specific, § 502(a)(1)(B) of ERISA establishes a private right of action that may be maintained by participants or beneficiaries of a covered plan "to recover benefits due to him [or her] under the terms of his [or her] plan, to enforce his [or her] rights under the terms of the plan, or to clarify his [or her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The Supreme Court recognized that ERISA's comprehensive regulatory framework is "intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Davila*, 542 U.S. at 208 (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)); *accord Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987) ("The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.").

### C. The Two-Part *Davila* Analysis

The two-part test for complete preemption is (1) whether the plaintiff, "at some point in time, could have brought [the] claim under ERISA § 502(a)(1)(B)," and

(2) whether "there is no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210. Complete preemption applies only if both prongs of this test are satisfied.

          1.      Application of *Davila* Part One

               a.      Section 502(a) Standing

The initial inquiry "is whether a plaintiff seeking to assert a state-law claim [that], 'at some point in time, could have brought [the] claim under ERISA § 502(a)(1)(B)." *Id*. What this asks, in the context of a healthcare provider, is whether the provider has standing to sue to recover the benefits *due under the plan* as the assignee of an ERISA plan beneficiary. The text of Section 502(a) provides that a "participant *or beneficiary*" may maintain a cause of action for benefits due under an ERISA plan. (Emphasis added.) Healthcare providers often obtain assignments from their patients to collect insurance benefits as payment for their services.

UHC asserts that Plaintiffs are pursuing some claims at issue here as assignees to ERISA plan benefits sponsored by United. The record in this case supports a finding that the Plaintiffs have obtained assignments to collect amounts due under their patients ERISA-based plans. (Doc. 31-1, Exhibit 2 at ¶ 10.) Where a healthcare provider obtains such an assignment, it stands in the shoes of the plan's beneficiaries and has standing to sue for benefits under § 502(a). *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1291 (9th Cir. 2014). Plaintiffs therefore have standing to sue under § 502(a).

Plaintiffs nevertheless contend that the assignments are irrelevant because they are not suing to enforce any rights under the assignment. In response, UHC argues that, for the purposes of complete preemption, Plaintiffs cannot recast what is a claim under § 502(a) as one for relief under state law. (Doc. 41 at 7.) UHC is correct. Plaintiffs are out-of-network providers. In the absence of a provider services agreement, the only legal construct that connects UHC to the Plaintiffs is the ERISA-based contracts between UHC and its insureds. But for UHC's ERISA-based contractual relationship with its insureds,

there would be no reason for Plaintiffs to seek any amount of payment from UHC. ERISA § 502(a) establishes the exclusive remedies arising out of those contracts.

      b.  Plaintiffs' "Rate of Payment" Argument

Plaintiffs argue that remand is appropriate because their claims "challenge only the rate of payment, not the right to payment . . . ." (Doc. 33 at 10.) Plaintiffs contend that this concept, which derives from previously decided preemption cases, stands for the proposition that so long as a healthcare provider solely challenges the amount of the insurer's payment, the complaint is not removable. But there is more to the distinction between a "right to payment" and the "rate of payment" than advanced by Plaintiffs.

In a pre-*Davila* case, the Ninth Circuit held that a state-court complaint for underpayment of medical services should be remanded despite ERISA's complete preemption doctrine. *Blue Cross of Cal. v. Anesthesia Care Associates Med. Group, Inc*., 187 F.3d 1045 (9th Cir. 1999). In *Blue Cross of California*, the plaintiff healthcare providers were not suing to recover benefits assigned to them by their patients under the ERISA plans. Instead, they sought to recover amounts due to them under separate provider agreements with the insurer. The Court held, "[t]he dispute here is not over the *right* to payment, which might be said to depend on the patients' assignments to the Providers, but the *amount*, or level, of payment, <u>which depends on the terms of the provider agreements</u>." *Id*. at 1051 (underscore added). In other words, the plaintiffs filed suit not to recover benefits from their patients' healthcare plans, but to recover fees owed to them by agreements that they had entered with the insurers directly.

Other cases that draw a distinction between the "right" and the "rate" are in accord. For example, in *Borrerro v. United Healthcare of New York, Inc.*, 610 F.3d 1296 (11th Cir. 2010), the court used this phrase in the context of claims that the insurer "breached its contracts with them (often called provider or subscriber agreements) by not paying them the full contracted rate for services rendered to United's insureds, in violation of common and statutory law." *Id*. at 1300. The same can be said about *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1350 (11th

Cir. 2009), where the court observed, "[Plaintiffs] stress that they are not seeking benefits under an ERISA plan, but instead seek to collect unpaid amounts they are owed under their Provider Agreements as a result of Anthem's use of improper payment methods . . . ."[3]

The distinction between "rate of payment" and "right of payment" in those cases rested upon the foundation that both sets of plaintiffs were contracted with the insurers for payment of services. Thus, it was the case that the providers sued in state court to enforce their provider agreements and collect the amount of money owed to them. Plaintiffs here cannot make the same claim because they are not suing to enforce a contract with UHC. Instead, their complaint asks a state court to first conclude that an implied-in-fact contract exists and then award them damages based on "the usual and customary rate or reasonable value of services for emergency care provided to Defendants' insureds." (Doc. 33 at 12.)

Without having a contract with UHC, Plaintiffs' argument must be rejected. The first *Davila* factor is satisfied because Plaintiffs could have brought a claim under § 502(a). Accordingly, the Court will proceed with the second part of the *Davila* inquiry.

2. Application of *Davila* Part Two

"The controlling question for [the Court] under *Davila* is whether a claim relies on the violation of a legal duty that arises independently of the plaintiff's, or their assignor's, ERISA plan." *Hansen*, 902 F.3d at 1059; *accord Marin General Hospital*, 581 F.3d at 950. *Davila* provides additional detail, emphasizing that complete preemption exists where the provider's claim depends on an ERISA-based plan between an insurer and its insured:

> It follows that if an individual brings suit complaining of a denial of coverage for medical care, where the individual is

---

[3] In *Borrero*, the court held that complete preemption applied and federal jurisdiction existed because, even though the providers sued to recover fees under a provider agreement, the plaintiffs' claims were "substantially dependent upon interpretation of ERISA plans." 610 F.3d at 1303 (internal quotation marks omitted). And, in *Connecticut State Dental Association*, the court found that the plaintiffs' rate-based claims implicated decisions that the insurer made under the terms of the ERISA plan. 591 F.3d at 1350-51.

> entitled to such coverage *only because of the terms of an ERISA-regulated employee benefit plan*, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B).

542 U.S. at 210 (emphasis added).

It is common in the healthcare marketplace for a provider to enter into its own contractual arrangement with an insurer. These contracts, including those of the out-of-network variety, exist to guarantee a specified payment amount for services provided to an insured patient. These contracts can take many forms. The Ninth Circuit has consistently held that, where such contracts exist, that a healthcare provider can maintain a state-law breach of contract action against an insurer despite ERISA's complete preemption principle. In *Blue Cross of California*, it held that complete preemption did not convert a provider group's breach of contract claim into a claim under § 502(a) because the suit arose from the insurer's alleged breach of the provider agreement's fee schedule. 187 F.3d at 1051. The court provided the following analytical framework: "the Providers are asserting contractual breaches, and related violations of the implied duty of good faith and fair dealing, that their patient-assignors could not assert: the patients simply are not parties to the provider agreements between the Providers and Blue Cross." *Id*. The Court thus characterized the claim as one based on an agreement standing alone from the ERISA plan, and it was one that carried its own legal duties and obligations.

Similarly, in *Marin General Hospital*, the court remanded a state-court case that arose from an oral agreement, made during a telephone call, between an insurer and a provider to cover 90% of its insured's treatment expenses. Critical to the court was the following observation, "[t]he obligation to pay this additional money does not stem from the ERISA plan, and the Hospital is therefore not suing as the assignee of an ERISA plan participant or beneficiary under § 502(a)(1)(B). Rather, the asserted obligation to make the additional payment stems from the alleged oral contract between the Hospital and MBAMD." *Marin General Hospital*, 581 F.3d at 948. The court continued, "[a]s in *Blue*

*Cross*, the Hospital is not suing defendants based on any assignment from the patient of his rights under his ERISA plan pursuant to § 502(a)(1)(B); rather, it is suing in its own right pursuant to an independent obligation." *Id.*

Plaintiffs' argument under *Davila*'s first prong is that they are not beneficiaries of the ERISA plans because they have asserted "independent rights, under Arizona law, for timely payment at the usual and customary rate or reasonable value of services for emergency care provided to Defendants' insureds." (Doc. 33 at 12.) Plaintiffs argue that they "have not asserted any claim to recover benefits due under any plan, to enforce benefits under the terms of any plan, or to clarify rights to future benefits." (Doc. 42 at 6.) Plaintiffs maintain that they have carefully crafted their complaint to avoid asserting claims that are based on the ERISA plans. Instead, they allege violations of Arizona statutory and common law, including a claim for breach of an implied-in-fact contract.

The Court is not convinced that Plaintiffs' strategy avoids complete preemption. This is largely because Plaintiffs' approach favors the form of their complaint over the substance of their complaint allegations, which runs afoul of Congress' intent in enacting § 502(a) and the established case law. *See Davila*, 542 U.S. at 214. Concerning the latter point, Plaintiffs rely heavily on *Marin General Hospital*, but that decision does not aid their cause. The critical distinction between this case and *Marin General Hospital* is that no independent contractual duty exists to bind UHC to certain rates that Plaintiffs would like to be paid. The same can be said about *Blue Cross of California*, where the insurer changed fee schedules that were part of provider agreements. 187 F.3d at 1052 ("[T]he Providers are asserting state law claims arising out of separate agreements for the provisions of goods and services . . . ."). The additional cases cited in Plaintiffs' briefs are equally unavailing. In each of those cases, the court determined that there was an enforceable contract that formed the basis of the state court action.

Plaintiffs' attempt to bridge this analytical gap by claiming that an implied-in-fact contract exists. It is this implied-in-fact contract that gives them a legal right to proceed with a state-court breach-of-contract theory. Extending *Marin General Hospital* to

achieve remand under an implied-in-fact contract is, however, a bridge to far. Importantly, support for this theory does not exist in precedent that is binding on this Court. In this Court's view, moreover, it is inconsistent with the Ninth Circuit's longstanding rationale that an independent agreement between a provider and an insurer can itself be enforced in a state-court proceeding. These prior decisions relied on express communication between the two parties over the provision of services and payment. No such agreement exists here. Indeed, the parties here were unable to reach agreement on a provider agreement, which is why the Plaintiffs are out-of-network providers. Plaintiffs complain that UHC's complete preemption defense gives them an unfair bargaining advantage in contract negotiations. The same can be said, however, of healthcare providers if they were permitted to simply leave the negotiating table and obtain a state-court judgement and verdict for breach of an implied-in-fact contract.

Then there is the conceptual problem of proof. Even proceeding beyond the most elementary proof issues concerning this claim, the Court's tasks would include determining what the rate should be, whether all procedures are covered in this implied-in-fact contract, its duration, the parties' termination rights, and the available remedies, among other things. *See Pyeatte v. Pyeatte*, 661 P.2d 196, 203 (Ariz. Ct. App. 1982) ("To support [Plaintiff's] claim for restitution based on an implied-in-fact contract, [Plaintiff] must demonstrate the elements of a binding contract."). Here, the unknown terms of the alleged implied-in-fact contract weigh against Plaintiffs' argument that any such implied-in-fact contract is a plausible remedy in this case. Further, these unknown terms simply do not fall within the holdings of *Marin* and *Blue Cross*, where actual agreements existed defining the parties' duties and expectations.

Finally, the Plaintiffs' approach is inconsistent with the policy of complete preemption as set forth by Congress and recognized by the Supreme Court in *Davila*. Congress intended to protect benefit plan participants by establishing national uniformity for the administration of employee benefit plans. *Davila*, 542 U.S. at 208. This includes, in the Supreme Court's words, an "integrated enforcement mechanism, ERISA

§ 502(a), . . . [which] is a distinctive feature of ERISA, and essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." *Id*. If put into place, Plaintiffs' theory would undermine Congress' policy objective by allowing the development of a patchwork of inconsistent litigation in state courts across the country. *Id*. at 216. For all of these reasons, the Second *Davila* factor is satisfied.

### 3. Result of *Davila* Inquiry

Both prongs of the *Davila* test are satisfied. Complete preemption exists and this Court will continue to exercise federal question jurisdiction. As a postscript, the Court finds it significant that the justices decided *Davila*'s preemption issue unanimously. Justices Ginsburg and Breyer, however, wrote separately to address Congressional policy. In her concurring opinion, Justice Ginsburg recognized a "rising judicial chorus urging that Congress and [this] Court revisit what is an unjust and increasingly tangled ERISA regime." *Davila*, 542 U.S. at 222 (Ginsburg, J., concurring) (quoting *DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 453 (3rd Cir. 2003) (Becker, J., concurring)). Plaintiffs here may view the preemptive effects of § 502(a) as "tangled" and "unjust," and perhaps they are. It is, however, as the Supreme Court recognized, a matter to be addressed by Congress and not the courts.

## IV. MOTION TO DISMISS

The Motion to Dismiss seeks dismissal of the Amended Complaint in its entirety under conflict and complete preemption, 29 U.S.C. §§ 1132(a)(1)(b), 1144(a), failure to plead with specificity, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), failure to plead fraud-based claims under the Arizona state court heightened pleading requirement, Ariz. R. Civ. P. 9(b), and failure to state a claim as a matter of law, Fed. R. Civ. P. 12(b)(6). The Amended Complaint does not assert any theory of liability that is not preempted under the complete preemption doctrine. The Amended Complaint must be dismissed for this reason, and the Court need not consider the alternative bases asserted in the Defendants' Motion.

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** denying the Amended Motion to Remand (Doc. 33).

**IT IS FURTHER ORDERED** denying Plaintiffs' request for attorney's fees and costs pursuant to 28 U.S.C. § 1447(c) (part of Doc. 33).

**IT IS FURTHER ORDERED** granting the Motion to Dismiss (Doc. 31) because all claims in the Amended Complaint are preempted by ERISA § 502(a); in all other respects, the motion to dismiss is deemed to be moot. The Clerk of the Court shall not enter judgment at this time.

**IT IS FINALLY ORDERED** that Plaintiffs may file a Second Amended Complaint pleading claims under ERISA on or before April 15, 2020. Should the Plaintiffs choose not to file a Second Amended Complaint, the Clerk of the Court shall enter judgment of dismissal with prejudice.

Dated this 25th day of March, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge